UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD GOREE,

                       Petitioner,                         Case Number: 2:13-CV-12766

v.                                           HONORABLE SEAN F. COX

BONITA HOFFNER,,

                       Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Richard Goree has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for armed robbery, first-degree home invasion, felonious assault, and possession of a firearm during the commission of a felony. Petitioner, who is presently incarcerated at the Woodland Center Correctional Facility in Whitmore Lake, Michigan, seeks habeas relief on the grounds that the prosecutor engaged in misconduct, he was denied his right of confrontation, and his trial attorney was ineffective in failing to present an alibi witness. Respondent has filed a response arguing that the claims are procedurally defaulted and/or meritless. For the reasons set forth, the Court denies the petition.

## I. BACKGROUND

Petitioner's convictions arise from a home invasion in Taylor, Michigan. The Michigan Court of Appeals provided this summary of the testimony adduced at trial:

Defendant's convictions arise from his participation with two other men in the May 28, 2004, home invasion of a house occupied by Denise Lake, her boyfriend Bruce Parrish, and her daughter Amy Wright in Taylor. According to the testimony of codefendant Floyd Steward, the three codefendants believed they would find marijuana and money at the home. After the men gained entry into the house, they demanded money and marijuana, assaulted Lake and Parrish, stole Parrish's watch and cash from his person, and attempted to break into Parrish's truck.  A neighbor contacted the police, who arrived at the scene and captured Steward and codefendant Abdulaziz Kabeer.  The third participant was able to escape. Wright and Steward identified defendant as the third participant.  Defendant was not arrested until January 2010.  The defense denied that defendant was involved in the crimes.

*People v. Goree*, No. 299867, 2012 WL 555795, *1 (Mich. Ct. App. Feb. 21, 2012).

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of armed robbery, first-degree home invasion, felonious assault, and possession of a firearm during the commission of a felony.  On July 7, 2010, he was sentenced to concurrent terms of 81 months to 20 years' imprisonment for the armed robbery and home invasion convictions, and 6 months to 4 years' imprisonment for the felonious assault conviction, to be served consecutively to 2 years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, which affirmed his convictions.  *Id.*  The Michigan Supreme Court denied Petitioner's application for leave to appeal.  *People v. Goree*, 492 Mich. 855 (Mich. July 24, 2012).

Petitioner then filed the pending habeas petition.  He raises these claims (which were also raised on direct review in state court):

I    Goree was deprived of his Fourteenth Amendment right to a fair impartial jury and due process, under the Sixth and Fourteenth Amendments, by prosecutorial misconduct comprised of improper argument which denied a

2

fundamental fair trial requiring reversal.

II.     Goree's conviction is the result of a denial of a Sixth and Fourteenth
        Amendment right to confrontation and cross-examination where a police
        officer was allowed to testify to highly prejudicial hearsay evidence from
        Goree's mother requiring reversal and a new trial.

III.    Goree was denied his constitutional right to a fair trial where the
        prosecutor's conduct, in her closing arguments, amounts to egregious
        conduct depriving Goree of a fair and balanced trial violative of the
        Fourteenth Amendment of the U.S. Constitution requiring reversal.

IV.     Goree was denied his Sixth Amendment right to a have the effective
        assistance of counsel where his trial lawyer failed to present a defense
        witness who could have established a cognizable defense of being
        elsewhere when the crime was committed, in violation of his Sixth
        Amendment right, requiring reversal.

## II.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

        (1) resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the
        Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination
        of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

3

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

(2000). An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A]

federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,' and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766,

773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)); *Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or

theories supported or ... could have supported, the state court's decision; and then it must

ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

4

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011).

### III.  Discussion

### A.  Prosecutorial Misconduct Claims

Petitioner raises claims of prosecutorial misconduct in his first and third claims for habeas corpus relief.  First, he argues that the prosecutor improperly argued in her opening statement that Petitioner had been on the run for six years, but presented no evidence to substantiate this remark.  Second, he argues that, in closing argument, the prosecutor impermissibly argued facts not in evidence and vouched for the testimony of two prosecution witnesses.

Respondent argues that both of these claims are barred from consideration on habeas review because the are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the claims that Respondent argues were not raised in accordance with state procedural rules.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153 (2012).

6

In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden,* 477 U.S. at 181*, quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeal's decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, *quoting Harrington*, 562 U.S. at 103.

The Michigan Court of Appeals, despite finding this claim not properly preserved, nevertheless, denied it on the merits, holding, in relevant part:

> "The purpose of an opening statement is to tell the jury what the advocate proposes to show."  *People v. Moss*, 70 Mich. App. 18, 32; 245 N.W.2d 389 (1976).  When a prosecutor observes during his opening statement that evidence will be presented, but that evidence is not subsequently presented at trial, reversal is not required if the prosecutor acted in good faith and the defendant was not prejudiced by the statement.  *People v. Wolverton*, 227 Mich.App 72, 76; 574 N.W.2d 703 (1997).  Although there was no direct evidence that defendant was aware of the felony warrant or that he was "on the run," the record does not show that the prosecutor acted in bad faith when she made the statement or that defendant was prejudiced.  At trial, the prosecutor presented testimony that defendant was identified as the third participant in the crimes shortly after they were committed, that he escaped from the crime scene by jumping over a fence, that a felony warrant was issued for his arrest in October 2004, that several unsuccessful efforts were made to locate him (including speaking with his mother), and that defendant was not arrested until January 2010, nearly six years after he fled the crime scene. Given this evidence, we cannot conclude that the prosecutor acted in bad faith in making the statement.  Accordingly, there was no plain error.
>
> Further, a timely objection and request for a curative instruction could have alleviated any prejudice arising from the challenged remark.  *See Watson*,

7

245 Mich. App. at 586.  And even though defendant did not object, the trial court instructed the jury that the lawyers' statements were not evidence and that the jury was to decide the case on the basis of the properly admitted evidence only.  These instructions were sufficient to dispel any possible prejudice.  *People v. Long*, 246 Mich. App. 582, 588; 633 N.W.2d 843 (2001). It is well established that jurors are presumed to follow their instructions. *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998).

*Goree*, 2012 WL 555795 at *1-2.

In *Frazier v. Cupp*, 394 U.S. 731, 733-37 (1969), the Supreme Court considered a similar issue where the prosecutor referenced anticipated, but unproduced testimony in opening statement.  The Supreme Court found no error.  The Court observed that the reference to the anticipated testimony was "not emphasized in any particular way; it took only a few minutes to recite and was sandwiched between a summary of petitioner's own confession and a description of the circumstantial evidence the State would introduce." *Id.* at 733. The Court held that where the prosecution does not unduly focus on the anticipated and unproduced evidence "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately."  *Id.* at 736 (quotation omitted).

The Michigan Court of Appeals' decision is a reasonable application of Supreme Court precedent.  As noted by the state court, the trial court instructed the jurors that the lawyers' statements were not evidence.  The prosecutor's reference to Petitioner being on the run was brief and was not the focus of the prosecution's opening statement or unduly

8

focused upon during the trial.  Under these circumstances, Petitioner has failed to show that the state court's decision that the there was no prosecutorial misconduct and no prejudice was contrary to or an unreasonable application of *Darden*.

Petitioner also argues that the prosecutor engaged in misconduct during her closing argument by incorrectly stating that Petitioner knew where Parrish lived and by vouching for the credibility of prosecution witnesses.  The Michigan Court of Appeals held that the prosecutor erred in stating that Petitioner knew where Parrish lived because no evidence supported that statement.  *Goree*, 2012 WL 555795 at *5.  Nevertheless, the Michigan Court of Appeals denied relief because it found no prejudice to Petitioner.  The state court noted that the prosecutor's remark was aimed at establishing for the jury Petitioner's identification as one of the three perpetrators.  Substantial other evidence supported his identity as the third robber: Wright and Steward identified Petitioner as the third participant, Parrish and Petitioner were acquainted through their jobs, and Petitioner asked Parrish where he kept the box of money and marijuana, showing that he had some familiarity with Parrish's habits.  *Id.*  The trial court gave an instruction that the lawyers' statements and arguments were not evidence.  *Id.*  The trial court's decision was not contrary to or an unreasonable application of *Darden*.  For the reasons stated by the Michigan Court of Appeals, the prosecutor's misstatement was not egregious as to render Petitioner's trial fundamentally unfair.

Finally, Petitioner argues that the prosecutor improperly vouched for the credibility of witnesses Wright and Steward, when she stated during closing argument:

9

"it doesn't look like anyone's lying.  They're telling the truth, one way or another."
*Goree*, 2012 WL 555795 at *5.  Prosecutors may not vouch for a witness's credibility.
Prosecutorial vouching and an expression of personal opinion regarding the accused's
guilt "pose two dangers: such comments can convey the impression that evidence not
presented to the jury, but known to the prosecutor, supports the charges against the
defendant and can thus jeopardize the defendant's right to be tried solely on the basis of
the evidence presented to the jury; and the prosecutor's opinion carries with it the
imprimatur of the Government and may induce the jury to trust the Government's
judgment rather than its own view of the evidence."  *United States v. Young*, 470 U.S. 1,
18-19 (1985).

The Michigan Court of Appeals held that the prosecutor's argument was not
improper.  The state court recognized the applicable law, including that a prosecutor may
not vouch for a witness's credibility or imply that she has some special knowledge about
a witness's truthfulness.  But, found that, in this case, the prosecutor did not imply some
special knowledge.  The Michigan Court of Appeals held that "[d]uring the challenged
remarks, the prosecutor urged the jury to evaluate the evidence, discussed the reliability
and consistency of the witnesses' testimony, and argued that there were reasons from the
evidence to conclude that both witnesses were credible."  *Goree*, 2012 WL 555795 at *6.
Moreover, the Michigan Court of Appeals held that even if the prosecutor's argument had
been improper, any prejudice was cured by the trial court's instructions.  *Ibid*.

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in

10

reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Michigan Court of Appeals reasonably disposed of the petitioner's claim.  The prosecutor did not imply that she had some special information about Steward's or Wright's testimony or credibility.  Instead, considered in its entirety, the prosecutor's argument asked the jury to consider these witnesses' motives for testifying and the consistency of their testimony. Even if the court of appeals erred, habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S., at 103.

### B.  Confrontation Clause Claim

Petitioner next argues that his right of confrontation was violated when a detective recounted a conversation with Petitioner's mother during which she stated that Petitioner was in town around the time of the home invasion.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.*, at 404-05 (internal quotation omitted).

11

The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'"  *Id.* at 405, *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. However, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford*, 541 U.S. at 59 n. 9 (2004) *citing Tennessee v. Street*, 471 U.S. 409, 414 (1985). Thus, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause.  Instead, the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted."  *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir.2005).  Accord *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply.").

Here, the Michigan Court of Appeals held that the testimony regarding the detective's contact with Petitioner's mother was not offered to prove the truth of the matter asserted.  *Goree*, 2012 WL 555795 at *2.  Instead it was offered "to explain the

12

course and propriety of the police investigation." *Id.* The state court held that "[b]ecause the statements were presented for the limited purpose of providing background information, they did not constitute hearsay." *Id.* The Court has no basis for questioning the trial court's decision that the testimony at issue was not offered for a hearsay purpose. Petitioner, therefore, has not established a Confrontation Clause violation.

Moreover, even if the testimony violated the Confrontation Clause, the error was harmless. A violation of the Confrontation Clause is subject to harmless error analysis. *See Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Coy v. Iowa*, 487 U.S. 1012, 1021-22 (1988); *Delaware v. Van Arsdall*, 475 U.S. at 681-84 (1986). On habeas review, to determine whether an error is harmless a court must ask whether the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), *quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946). "To determine the effect of the error under *Brecht*, [the court should] consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial." *Peterson v. Warren*, 311 F. App'x 798, 805 (6th Cir. 2009), *citing Brecht*, 507 U.S. at 639. Factors to be considered in determining whether a Confrontation Clause error was harmless under Brecht include: "(1) 'the importance of the witness' testimony in the prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" *Vasquez*,

496 F.3d at 574 and 574 n. 8 (6th Cir. 2007), *quoting Delaware v. Van Arsdall*, 475 U.S. at 684.

The state court concluded that the challenged testimony, if in error, was harmless because, contrary to Petitioner's assertion, the information relayed by the detective from Petitioner's mother placed Petitioner in town two weeks after the incident, not on the date of the incident. Further, the identification testimony provided by two witnesses was more relevant and substantial proof of Petitioner's guilt. The state court's holding is not clearly erroneous, nor is it contrary to, or an unreasonable application of, Supreme Court precedent or federal law. Given the strength of the evidence against Petitioner, the Court concludes that the challenged testimony did not have a substantial or injurious effect on the jury's verdict.

## C.  Ineffective Assistance of Counsel Claim

Finally, Petitioner argues that his attorney was ineffective in failing to produce an alibi witness, failing to object to prosecutorial misconduct, and failing to object to the scoring of offense variables.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

14

defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Id.*

First, Petitioner argues that counsel should have called Kevin Cannon as an alibi witness. Petitioner states that Cannon would have testified that he was living with

15

Cannon in Birmingham, Alabama at the time of the home invasion. Petitioner attaches an undated affidavit from Cannon in support of his claim. This affidavit was never presented to the state courts. This Court is therefore "categorically barred by *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1400 n.7 (2011)" from considering the affidavit on habeas review. *Shoemaker v. Jones*, 600 F. App'x 979, 983 (6th Cir. 2015).[1] The Michigan Court of Appeals denied this claim, finding that defense counsel was clearly aware of the alibi witness and Petitioner failed to overcome "the strong presumption that counsel chose not to call Cannon as a matter of trial strategy." *Goree,* 2011 WL 555795 at *6. This Court concurs with the state court's assessment that Petitioner fails to overcome the presumption that counsel's conduct was sound trial strategy. *See Roush v. Burt*, 313 F. App'x 754, 761 (6th Cir.2008) (finding no reason to deem counsel ineffective for failing to call a witness where the record showed that counsel had investigated the witness). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir.2002) (holding that "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Accordingly, the Michigan Court of Appeals' conclusion that counsel's decision not to call Cannon was a product of considered trial strategy was a reasonable application of

---

[1] Moreover, even if the Court could consider the affidavit, it does not further Petitioner's claim. The affidavit is undated and the notary's signature appears on a separate page, with no clear connection to the affidavit. Further, the content of the affidavit, even if believed, would tend to establish only Petitioner's general residence in Alabama, not his presence there at the time of the home invasion.

16

*Strickland*.  Petitioner is not entitled to habeas relief on this claim.

Next, Petitioner argues that counsel was ineffective in failing to object to multiple instances of alleged prosecutorial misconduct.  As discussed above, with one exception the prosecutor's conduct was not improper and counsel, therefore was not ineffective in failing to object on those bases.  With respect to the prosecutor's stating, with no evidentiary support, that Petitioner had been on the run, the state court found no ineffective assistance of counsel because Petitioner failed to show any prejudice.  *Goree*, 2012 WL 555795 at *6.  The Court finds this to be a reasonable application of *Strickland's* second prong.  The prosecutor's statement was brief, tangential to the heart of the case, and the jury was instructed that the lawyers' arguments were not evidence.  The Court finds no error.

Finally, Petitioner argues that counsel was ineffective in failing to object to the scoring of offense variables.  Petitioner's argument in this regard is brief and fails to specifically identify which offense variable(s) he claims were incorrectly scored.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).  Habeas relief is denied.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a

17

2:13-cv-12766-SFC-MAR   Doc # 9   Filed 10/23/15   Pg 18 of 18   Pg ID 1006

certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

### V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**


S/Sean F. Cox_____
Sean F. Cox
United States District Judge


Dated:  October 23, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 23, 2015, by electronic and/or ordinary mail.

S/Jennifer Hernandez McCoy_____
Case Manager

18